UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

ARCH SPECIALTY INSURANCE
COMPANY,

                          Plaintiff,

          -against-

BETTER ENERGY SERVICE INC.,

                          Defendant.

-------------------------------------------------------------- x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E D N.Y.

★ AUG 26 2022 ★

BROOKLYN OFFICE

**REPORT AND
RECOMMENDATION**
20 CV 6255 (LDH) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

On December 24, 2020, plaintiff Arch Specialty Insurance Company ("plaintiff" or "Arch Specialty") commenced this breach of contract action against defendant Better Energy Service Inc. ("defendant" or "Better Energy"), seeking damages for defendant's alleged breach of the insurance policy issued by Arch Specialty, as well as "New York State Taxes and Fees," pre-judgment interest, attorney's fees, and costs of suit. (See Compl.[1]).

On January 21, 2022, plaintiff moved for entry of default judgment against Better Energy, asking this Court to declare that Better Energy is liable for breach of contract and account stated. (See Pl.'s Mem.[2] at 2). On August 1, 2022, this Court issued a Report and Recommendation, respectfully recommending that plaintiff's motion for default judgment be denied and, absent a filing from plaintiff by August 8, 2022, be dismissed for failure to comply with the Court's earlier Order dated July 7, 2022 to supplement the motion with additional information. (See ECF No. 17).

---

[1] Citations to "Compl." refer to plaintiff's Complaint, filed Dec. 24, 2020, ECF No. 1.
[2] Citations to "Pl.'s Mem." refer to plaintiff's Memorandum of Law in Support of Motion for Default Judgment against defendant Better Energy, filed Jan. 21, 2022, ECF No. 14-11.

For the reasons set forth below, the Court now vacates its Report and Recommendation issued on August 1, 2022 (see ECF No. 17), and respectfully recommends that plaintiff's motion for default judgment be granted in part and denied in part.

## FACTUAL BACKGROUND

As set forth in greater detail in the Court's earlier Report dated August 1, 2022, the plaintiff's claims arise from the issuance of a commercial general liability insurance policy to defendant Better Energy for the period of December 18, 2017 to December 18, 2018. (Compl. ¶ 6). Plaintiff alleges that under the Policy, the initial premium calculations were derived from estimates of defendant's exposure "based on information submitted by Better Energy," and subject to revision following an audit to determine defendant's actual exposure. (Id. ¶¶ 9-10; see Policy[3] at 23). The Policy provides for the adjustment of the premium if the audit indicates that the exposure was higher or lower than originally estimated.

The Complaint alleges that based on an audit conducted on or about May 3, 2019 ("the Audit"), it determined that Better Energy owed an additional premium of $115,500.00. (Id. ¶ 11; Pellitteri Decl.[4] ¶ 12; see ECF No. 14-9). Plaintiff alleges that by failing to remit payment of the additional premium and certain New York State taxes and fees, Better Energy is in breach of the terms of the Policy and thus, plaintiff seeks damages based on claims of breach of contract, account stated and unjust enrichment. (Compl. ¶¶ 12, 13, 14, 19, 23).

---

[3] Citations to "Policy" refer to the Policy, filed Jan. 21, 2022, ECF No. 14-8.
[4] Citations to "Pellitteri Decl." refer to the Declaration of Sal A. Pellitteri, plaintiff's Assistant Vice President, in support of plaintiff's Motion for Default Judgment, filed Jan. 21, 2022, ECF No. 14-7. The Court notes that the Pellitteri Declaration is undated.

## PROCEDURAL BACKGROUND

On January 21, 2022, Arch Specialty filed a motion for default judgment against Better Energy, seeking damages only as to its breach of contract and account stated claims. (See ECF No. 14; Pl.'s Mem.). In support of its motion for default judgment, plaintiff submitted the declaration of Sal A. Pellitteri, a Vice President of one of plaintiff's affiliates, the Policy in question, the Audit Report, and the invoice for the premium. (See Pellitteri Decl.; Policy; Audit Rep.[5]; Premium Inv.[6]). As set forth in the August 1, 2022 Report, plaintiff requests entry of a judgment in the amount of $115,500.00, representing the alleged additional premium determined in the audit, plus $4,354.35 in New York State Taxes and Fees, for a total of $119,854.35. (Pl.' Mem. at 4; Compl. ¶ 11; Pellitteri Decl. ¶ 12; Audit Rep.).

Although plaintiff seeks $115,500.00 as the premium amount determined by the Audit (Compl. ¶¶ 10-11; Pellitteri Decl. ¶ 12; Audit Rep.), the Premium Invoice submitted by plaintiff in support of its request for damages lists the "Net Amount Due" as $98,175.00. (See Premium Inv. at 2). The Invoice also references a "Commission @ 15.00%" of $17,325.00, which when added to the $98,175.00 totals $115,500.00. (See id.). However, because the Policy does not mention a "Commission" and plaintiff did not provide any other basis for charging defendant with a "Commission," nor did plaintiff explain how the "Commission" was calculated, the Court Ordered plaintiff to supplement its motion by July 21, 2022, and provide the Court with additional support "clarifying the premium invoice, the Commission, and the total amount of premiums requested." (See ECF No. 16). The Court also Ordered plaintiff to serve a copy of the Order on Better Energy and file proof of service on the docket by July 11, 2022. (Id.)

---

[5] Citations to "Audit Rep." refer to the Premium Audit Adjustment Statement, dated May 3, 201 ), filed Jan 21, 2022, ECF No. 14-9.

[6] Citations to "Premium Inv." refer to the Premium Invoice, dated June 5, 2019, filed Jan 21, 2022, ECF No. 14-10.

However, plaintiff failed to timely file any supporting documentation and did not file proof of service on the docket. Consequently, in issuing its initial Report and Recommendation, dated August 1, 2022, the Court respectfully recommended that plaintiff's motion for default judgment be denied and, absent a filing from plaintiff by August 8, 2022, be dismissed for failure to comply with the Court's Order. (See ECF No. 17).

On August 5, 2022, Arch Specialty filed a declaration in further support of its motion for default judgment, an "Audit Progress Report," and a letter explaining its failure to supplement. (See ECF No. 18). However, plaintiff's supplementation did not adequately address the Court's inquiries. Nevertheless, on August 10, 2022, the Court gave plaintiff another opportunity to properly supplement its motion by August 17, 2022. (See ECF No. 20). Thereafter, plaintiff timely filed a supplemental declaration. (See Suppl. Decl.[7]).

## DISCUSSION

### A. Default Judgment

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. See id.; see also Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"). Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the Court may enter a

---

[7] Citations to "Suppl. Decl." refer to the Supplemental Declaration of Sal A. Pellitteri, dated Aug. 17, 2022, ECF No. 22.

4

default judgment. See Fed. R. Civ. P. 55(b). The Clerk of the Court entered a default against Better Energy on March 9, 2021. (See ECF No. 9). To date, Better Energy has not moved to vacate the entry of default. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992) (holding that "[the defendant's] default is crystal clear – it does not even oppose this motion" of default judgment).

Providing guidance as to when a default judgment is appropriate, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party. Id. "Accordingly, plaintiffs are not entitled to a default judgment as a matter of right simply because a party is in default." UFCW Loc. 50 Pension Fund v. G & W Food Prod., Inc., No. 20 CV 4751, 2021 WL 3934139, at *3 (E.D.N.Y. Aug. 17, 2021), report and recommendation adopted, 2021 WL 3931351 (E.D.N.Y. Sept. 2, 2021).

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including (1) whether the grounds for default are clearly established; (2) whether the claims were adequately pleaded in the complaint, thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); and (3) the amount of money

potentially involved – the more money involved, the less justification for entering the default judgment. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2. Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

When a default judgment is entered, a defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. See Greyhound Exhibitgroup, Inc. v E.L.U.L. Realty Corp., 973 F.2d at 158; Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989)); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Deshmukh v. Cook, 630 F. Supp. 956, 959-60 (S.D.N.Y. 1986); 6 Moore's Federal Practice ¶ 55.03[2] at 55-16 (2d ed. 1988). However, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Northfield Ins. Co. v. ABC Constr. & Home Improvement, Inc., No. 19 CV 195, 2020 WL 2616306, at *4 (E.D.N.Y. May 4, 2020) (citations and quotations omitted), report and recommendation adopted, 2020 WL 2616214 (E.D.N.Y. May 22, 2020).

**B. Choice of Law**

In a diversity action such as the case at hand, the choice of law rules of the forum state govern. See Krauss v. Manhattan Life Ins. Co., 643 F.2d 98, 100 (2d Cir. 1981). Thus, the New York choice of law rules apply here. Under New York's choice of law rules, "where liability insurance contracts are concerned, the applicable law is generally the local law of the state which the parties understood was to be the principal location of the insured risk." Lapolla

Indus., Inc. v. Aspen Specialty Ins. Co., 566 F. App'x 95, 97 (2d Cir. 2014) (internal quotation

marks and citations omitted). Courts have interpreted the "principal location of the insured risk'

to include the insured's principal place of business. See Phoenix Ins. Co. v. Minelli Constr. Co.

Inc., No. 20 CV 2765, 2021 WL 3275903, at *3 (E.D.N.Y. June 28, 2021) (holding that New

York law applied to a New York corporation with its principal place of business in New York

because the policy's "center of gravity" was in New York (quoting Liberty Mut. Ins. Co. v.

Fairbanks Co., 170 F. Supp. 3d 634, 642 (S.D.N.Y. 2016)), report and recommendation

adopted, No. 20 CV 2765, 2021 WL 3269055 (E.D.N.Y. July 30, 2021), on reconsideration, No.

13 CV 3755, 2016 WL 4203543 (S.D.N.Y. Aug. 8, 2016); see also Arch Specialty Ins. Co. v.

Canbert Inc., No. 19 CV 05920, 2021 WL 1200329, at *5 (E.D.N.Y. Mar. 9, 2021) (holding that

"on a motion for default judgment, where the party has relied on New York law and no party has

challenged its application, a court may apply New York law"), report and recommendation

adopted, 2021 WL 1193004 (E.D.N.Y. Mar. 30, 2021). Since Better Energy is a New York

corporation with its principal place of business in Brooklyn, New York (Compl. ¶ 1), the Court

finds that New York law governs the Policy and its alleged breach.

## C. Breach of Contract

Arch Specialty alleges that Better Energy breached the Policy by failing to pay the

additional premium and by not paying certain New York State Taxes and Fees it owed Arch

Specialty pursuant to the terms of the Policy. (Compl. ¶ 16). As a threshold matter, "insurance

policies are contracts and are therefore interpreted according to the rules of contract

interpretation." SCW W. LLC v. Westport Ins. Corp., 856 F. Supp. 2d 514, 524 (E.D.N.Y.

2012) (quoting Frazer Exton Dev., L.P. v. Kemper Env't, Ltd., 153 F. App'x 31, 32 (2d Cir.

2005)).

To successfully plead breach of contract in New York, the plaintiff must show: "'(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" Martino v. MarineMax Ne., LLC, No. 17 CV 4708, 2018 WL 6199557, at *3 (E.D.N.Y. Nov. 28, 2018) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)). Plaintiff alleges that it entered into a contract with defendant to provide liability coverage. (Compl. ¶¶ 6,7). Consideration is established through plaintiff's claim that it provided coverage in exchange for defendant's payment of premiums. (Id.) The performance requirement is satisfied by plaintiff's claim that it fulfilled its contractual obligations and provided coverage as provided in the Policy. (Id. ¶ 8). The third and fourth elements are established by plaintiff's allegations that Better Energy breached the contract by failing to pay the additional premiums and New York State Taxes and Fees as required in the contract, and thus caused plaintiff to suffer damages. (Id. ¶¶ 16, 17).

Accepting plaintiff's allegations as true for purposes of this default, plaintiff has stated a claim for breach of contract in New York. See, e.g., Arch Specialty Ins. Co. v. Canbert Inc., 2021 WL 1200329, at *4 (finding similar allegations sufficient to state a breach of contract claim); Arch Specialty Ins. Co. v. Apco Indus., Inc., No. 18 CV 4041, 2020 WL 6581000, at *5 (E.D.N.Y. Oct. 5, 2020) (same); Arch Specialty Ins. Co. v. All Island Bldg. & Restoration Inc., No. 19 CV 2396, 2020 WL 6321964, at *3 (E.D.N.Y. May 2, 2020) (same), report and recommendation adopted, No. 19 CV 2396, 2020 WL 4783357 (E.D.N.Y. Aug. 18, 2020); Arch Specialty Ins. Co. v. Kajavi Corp., No. 18 CV 4043, 2019 WL 3719461, at *2 (E.D.N.Y. July 11, 2019) (same), report and recommendation adopted, 2019 WL 3717441 (E.D.N.Y. Aug. 7, 2019). Thus, the Court respectfully recommends finding that defendant breached its contract with plaintiff.

### D. Account Stated

Plaintiff also raises an "account stated" claim on the grounds that although Better Energy was "indebted to plaintiff upon an account stated between them, [and] promised to pay Arch the amount owed on demand," Better Energy failed to do so despite repeated demands. (Compl. ¶¶ 8, 9). In order "to recover on an account stated claim under New York law, the movant must prove the existence of an agreement between the parties based on prior transactions between them." Samara v. Gangemi & Gangemi, No. 02 CV 1407, 2005 WL 1076320, at *1 (E.D.N.Y. May 3, 2005) (citing Carey v. Lau, 140 F. Supp. 2d 291, 298 (S.D.N.Y. 2001)).

However, "a defendant cannot be found liable on both an account stated claim . . . and a breach of contract claim . . . in connection with the same allegations of a failure to pay monies owed." Arch Specialty Ins. Co. v. Kajavi Corp., 2019 WL 3719461, at *3 (citations and quotations omitted); see also Arch Specialty Ins. Co. v. Canbert Inc., 2021 WL 1200329, at *5. Here, as set forth above, the Court finds that the defendant is liable for a breach of contract in connection with its failure to pay monies owed under the insurance Policy. Thus, the account stated claim is necessarily precluded.

### E. Damages

When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that: "The Court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B). While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases),

aff'd, 873 F.2d 38 (2d Cir. 1989). Here, because the plaintiff has provided sufficient

documentation in support of its request for damages, including the declaration of Sal A.

Pellitteri, a Vice President of one of plaintiff's affiliates, the Policy in question, the Audit Report,

and the invoice for the premium, the Court will proceed with damages absent a hearing. (See

Pellitteri Decl.; Policy; Audit Rep.; Premium Inv.).

    1) Additional Premium

Plaintiff alleges that defendant failed to pay the additional premium worth $115,500.00.

(Compl. ¶ 11; Pellitteri Decl. ¶ 12; Audit Rep.; Premium Inv.). This figure was determined

pursuant to an Audit, which revealed that defendant's exposure was greater than initially

estimated. (Compl. ¶¶ 10-11; Pellitteri Decl. ¶ 12; Audit Rep.). Plaintiff contends that the

Policy allowed plaintiff to charge an additional premium, or return a portion of the initial

premium, depending on defendant's actual exposure for the effective dates of coverage as

calculated through the Audit. (Compl. ¶ 10; Pellitteri Decl. ¶ 9; Pl.'s Mem. at 2). Condition 5 of

Section IV of the Policy provides that:

> The premium shown in this policy as the Deposit Premium is an
> advance premium only. At the close of each audit period we will
> compute the earned premium for that period and send notice to the
> first Named Insured . . . If the sum of the Deposit and any audit
> premiums paid for the "policy period" is greater than the earned
> premium, we will return the excess to the first Named Insured.

(Policy at 23).

Additionally, Condition 1 of the Premium Computation Endorsement Section of the

Policy stipulates that:

> The Deposit Premium set forth in **Item 4.** of the Declarations is
> adjustable, and is only an estimated premium for the Audit Period
> Shown below. The final earned premium for the Audit Period shall
> be determined as specified in Condition **5 Premium Audit** of
> **SECTION IV – COMMERCIAL GENERAL LIABILITY**

10

**CONDITIONS**.  The Audit Premium shall be computed by applying the Rate of $154.00 per each $1,000 of the Premium Base identified in **2.** below.

(Id. at 55).

New York contract law provides that "a party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms." Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171, 185 (2d Cir. 2007). Thus, in evaluating damages for breach of contract actions, damages should be awarded to "provide the injured party with the benefit she would have enjoyed had no breach occurred . . . " Nature's Plus Nordic A/S v. Nat. Organics, Inc., 98 F. Supp. 3d 600, 605 (E.D.N.Y. 2015), aff'd, 646 F. App'x 25 (2d Cir. 2016) (quoting World of Boxing LLC v. King, 107 F. Supp. 3d 265, 268 (S.D.N.Y.), aff'd in part, rev'd in part and remanded, 634 F. App'x 1 (2d Cir. 2015)).

In light of the contractual language, and considering the evidence presented by plaintiff that has not been challenged by defendant, the Court finds that plaintiff is owed an additional amount of premium under the Policy.  The Audit demonstrated that Better Energy's exposure, calculated pursuant to the formula set forth in the Policy – namely, $154 per each $1,000 – was $750,000 greater than originally estimated.  Thus, plaintiff seeks an additional premium of $115,500.00.  (Compl. ¶ 11; Pellitteri Decl. ¶ 12; Premium Inv.).  While the Court, through its own calculations, has reached the same amount of unpaid premium, the second page of plaintiff's submitted Premium Invoice lists the "Net Amount Due" to plaintiff as $98,175.00, after a 15% "Commission" ($17,325.00) is subtracted from the $115,500.00 additional premium. (Premium Inv.).  In the Supplemental Declaration of Sal A. Pellitteri, plaintiff now explains that it would have ceded a 15% commission to Better Energy's broker, Hull & Company ("Hull"),

11

had Hull collected the premium from Better Energy and remitted it to plaintiff. (Suppl. Decl. ¶¶ 7, 9). Therefore, plaintiff contends, since Hull did not collect the premium, plaintiff is owed the entire premium amount of $115,500.00. (Id. ¶ 10).

However, plaintiff provides no documents explaining the basis for the 15% commission.[8] In the Supplemental Declaration, plaintiff explains that because Hull is an agent of defendant Better Energy, plaintiff has no documents reflecting any agreement as to the payment of a commission to Hull. (Supp. Decl. ¶ 8). Thus, plaintiff has not produced any contracts between defendant and its broker that would support the calculation of the 15% commission, nor is there any documentation in support of plaintiff's claim that this same commission would be owed on any additional premiums calculated pursuant to an audit. More importantly, there is nothing before this Court that provides that in the event the premium is not collected by Hull, the 15% commission is subject to collection by plaintiff.

Accordingly, the Court respectfully recommends that Arch Specialty be awarded $98,175.00 in damages for the unpaid additional premium, which is the amount of money that it would have received under the contract had it been performed. In the absence of any documentation relating to the 15% commission, including whether it applies to additional premium amounts determined by an audit, how it was calculated, and plaintiff's right to collect it from defendant, the Court declines to recommend an award of this amount at this time.[9]

---

[8] Attached to plaintiff's supplemental declaration is a copy of the Binder of Insurance for Better Energy, which lists Hull as defendant's broker and a 15% commission deducted from the gross premium amount of $462,000.000. (Suppl. Decl. ¶ 9, Ex. A). However, this document contains no details for the basis of the 15% commission as agreed upon between Arch Specialty and Better Energy, such as whether that same commission would be owed on any additional premiums.

[9] The Court also notes that it does not know whether Better Energy has already paid the commission amount to Hill.

2) New York State Taxes and Fees

Plaintiff also alleges that defendant failed to pay New York State Taxes and Fees. (Compl. ¶ 14; Pellitteri Decl. ¶ 15; Suppl. Decl. ¶ 11). Specifically, plaintiff claims that it is owed a New York State Surplus Lines Tax, equal to 3.6% of the additional premium, and a New York State Stamping Fee, equal to 0.18% of the additional premium. (Compl. ¶ 14). According to plaintiff's calculations, these taxes and fees equal $4,354.35 in total. (Compl. ¶ 14; Pellitteri Decl. ¶ 15; Premium Inv.; Suppl. Decl. ¶ 11). Despite claiming it is entitled to these taxes and fees, plaintiff concedes that it has not paid them. (Suppl. Decl. ¶ 11). Rather, plaintiff claims that it will pay the New York State Taxes and Fees "if/when the premium is paid . . . as it is obligated to do under New York Law." (Suppl. Decl. ¶ 11).

In seeking to recover these taxes and fees, plaintiff failed to cite the New York statutes providing for these taxes and fees, and provided no authority under which plaintiff, as the insurer, would be "obligated" to pay such taxes and fees. Although plaintiff was given several opportunities to provide the citations for the statutory provisions governing the payment of these taxes and fees, plaintiff still has not provided the Court with any citations to the specific statute. Based on the Court's own research, it appears that in seeking reimbursement for the Surplus Lines Tax, plaintiff may be relying on either (1) N.Y. Tax Law § 1551, which imposes a 3.6 percent tax on "a taxable insurance contract from an insurer not authorized to transact business in [New York]. . . ," or (2) N.Y. Ins. Law § 2118(d)(1), which requires an excess lines broker to pay a 3.6 percent tax where New York is the insured's home state. However, neither statute provides that the insurance company will pay this tax on behalf of the insured or broker.

Similarly, for the Stamping Fee that plaintiff seeks to recover, plaintiff appears to be referring to a stamping fee imposed by the Excess Line Association of New York (ELANY), an

advisory association that has the duty to stamp certain excess line insurance documents. See N.Y. Ins. Law § 2130. Pursuant to its online procedures manual, ELANY imposes an 0.18 percent stamping fee of New York Excess Line Premium for policies beginning on or after July 1, 2015. *Section VI – FEES*, ELANY, https://www.elany.org/procedures-manual?d=1213 (last visited Aug. 22, 2022). The fee has since been reduced to 0.17 percent for policies going into effect on or after January 1, 2017. (Id.) Here, the Policy became effective in December 2017, and therefore the stamping fees owed to ELANY would be calculated using the 0.17 percent rate and therefore would be $196.35.[10]

However, even if this ELANY fee is the basis for plaintiff's request for the stamping fees, New York Insurance Law provides that such fees "shall be paid by the excess line licensee" (i.e., the broker) or "from the insured . . . if the licensee obtains a written memorandum." N.Y. Ins. Law § 2130(f). Again, there is no mention in the statute as to whether the insurer is required to pay such fees on behalf of the broker in the event of a default by the insured.

Nor, again, does plaintiff provide any support for the proposition that defendant agreed to pay these taxes and fees or that plaintiff is otherwise entitled to receive these taxes and fees from defendant under the Policy. Courts have previously denied an award of New York State Taxes and Fees under similar circumstances. See Arch Specialty Ins. Co. v. M. Lopez Contracting Corp., No. 19 CV 07024, 2021 WL 7830147, at *4 (E.D.N.Y. Mar. 10, 2021) (denying plaintiff's request for New York State Taxes and Fees in a similar breach of contract action because "plaintiff failed to show any agreement by Defendants to pay the NYS Taxes and Fees"); Arch

---

[10] Although plaintiff alleges in the Complaint that it is entitled to the Stamping Fee, calculated a 0.18 percent, it appears that this is simply a mistake and that in actually calculating the amount owed, plaintiff used the 0.17 rate. Thus, using the 0.17 rate, the Stamping Fee would amount to $196.35, which when added to the $4,158.00 calculated for the Surplus Lines Tax using the 3.6 percent rate, totals $4,354.35, the exact amount plaintiff is requesting.

Specialty Ins. Co. v. All Island Bldg. & Restoration Inc., 2020 WL 6321964, at *4 (denying

plaintiff's request for New York State Taxes and Fees under similar circumstances because of a

lack of supporting documentation). Therefore, despite being given several opportunities to

provide the necessary supporting citations and documentation, plaintiff failed to do so.

Accordingly, the Court respectfully recommends that plaintiff's request for taxes and fees worth

$4,354.35 be denied.

    3) Litigation Costs[11]

Plaintiff also seeks costs of litigation in the amount of $440.00. (Compl. ¶ 14; Lahr

Decl.[12] ¶ 16). Plaintiff reaches this figure by adding the filing fee of $400 to the fees incurred for

service of process, which are $40.00. (ECF No. 6; Lahr Decl. ¶ 16). Plaintiff may recover

litigation costs for this action. See Fed. R. Civ. P. 54(d)(1); Arch Specialty Ins. Co. v. Kajavi

Corp., 2019 WL 3719461, at *10 (awarding plaintiff the court filing fee and fees for service of

process in a similar breach of contract action); see also Mktg. Devs., Ltd. v. Genesis Imp. &

Exp., Inc., No. 08 CV 3168, 2009 WL 4929419, at *12 (E.D.N.Y. Dec. 21, 2009); Gerritsen v.

Glob Trading, Inc., No. 06 CV 3756, 2009 WL 262057, at *12 (E.D.N.Y. Feb. 4, 2009). Courts

routinely award costs for filing fees and service of process. See Finkel v. Triple A Grp., Inc.,

708 F. Supp. 2d 277, 290-91 (E.D.N.Y. 2010). Based on a review of the record, the Court takes

notice of the $400 filing fee in this district and respectfully recommends that plaintiffs be

awarded $400 for that amount. Although plaintiff did not submit invoices for its service costs,

the Court may look to the affidavit of service itself. (See ECF No. 6). The affidavit states that

---

[11] Although plaintiff seeks an award of attorney's fees in the Complaint, plaintiff does not make a request for fees in its motion for default judgment. (Compl. at 4). Thus, the Court has not considered for the issue of fees.

[12] Citations to "Lahr Decl." refer to the Declaration of J. Gregory Lahr, dated Jan. 21, 2022, ECF No. 14-1.

plaintiff paid a fee of $40 to the Secretary of State. (Id.) Accordingly, the Court respectfully recommends awarding plaintiff $440.00 in costs of litigation.

4) Pre-Judgment Interest

Plaintiff seeks pre-judgment interest calculated from July 5, 2019, the date that payment for the additional premium was due. (Lahr Decl. ¶ 17; Pl.'s Mem. at 10). Under New York law "interest shall be recovered upon a sum awarded because of a breach of performance of a contract . . . [and] shall be computed from the earliest ascertainable date the cause of action existed." N.Y.C.P.L.R. § 5001(a)-(b). In other words, pre-judgment interest is recoverable from the earliest date the cause of action accrued to the date of entry of final judgment. N.Y.C.P.L.R § 5001(c); N.Y.C.P.L.R. § 5002; see also Paddington Partners v. Bouchard, 34 F.3d 1132, 1139 (2d Cir. 1994). The applicable interest rate is nine percent per annum. N.Y.C.P.L.R. § 5004(a).

The Court agrees with plaintiff's proposed date for calculating interest, July 5, 2019, on the grounds that "the earliest date of [the] breach is . . . the date the Additional Premium became due." Arch Specialty Ins. Co. v. Apco Indus., Inc., 2020 WL 6581000, at *7; see also Nedspice US Inc. v. Casteila Imports, Inc., No. 20 CV 1802, 2020 WL 6785335, at *6 (E.D.N.Y. Oct. 22, 2020), report and recommendation adopted, No. 20 CV 1802, 2020 WL 6784178 (E.D.N.Y. Nov. 18, 2020); Arch Specialty Ins. Co. v. Kajavi Corp., 2019 WL 3719461, at *3. Accordingly, the Court respectfully recommends that plaintiff be awarded interest calculated at a rate of nine percent per annum on the total recommended amount of $98,175.00 beginning July 5, 2019, until the date of the District Court's Order adopting this Report and Recommendation.

5) Post-Judgment Interest

Finally, plaintiff is also entitled to post-judgment interest under 28 U.S.C. § 1961, which stipulates that "interest shall be allowed on any money judgment in a civil case recovered in a

district court." 28 U.S.C. §1961(a).  The interest rate is calculated from "the date of entry of the judgment[,]" and statutorily set "at a rate equal to the weekly average 1-year constant maturity treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." Id.  While plaintiff does not request an award of post-judgment interest in its Complaint or its motion for default judgment, Section 1961 "is mandatory . . . its terms do not permit of the exercise of judicial discretion in its application." Akermanis v. Sea-Land Serv., Inc., 521 F. Supp. 44, 57 (S.D.N.Y. 1981), rev'd on other grounds, 688 F.2d 898 (2d Cir. 1982), cert denied, 461 U.S. 927 (1983).  Therefore, the Court respectfully recommends that plaintiff be awarded post-judgment interest on the total recommended amount of $98,175.00, beginning on the date of entry of final judgment until it is paid.

## CONCLUSION

Accordingly, it is respectfully recommended that plaintiff's motion for default judgment be granted in part and denied in part.  The Court recommends awarding plaintiff $98,175.00 in damages for the breach of contract claim (the value of the unpaid additional premium of $115,500.00, less the 15% commission plaintiff claims it would have ceded to defendant's broker).  Additionally, the Court recommends that plaintiff be awarded $440.00 in litigation costs, consisting of the $400.00 filing fee and $40.00 in service of process costs.  The Court further recommends that plaintiff be awarded pre-judgment interest at a rate of nine percent per annum from the date of July 5, 2019, until the date of the District Court's Order adopting this Report and Recommendation, as well as post-judgment interest from the date of entry of final judgment until it is paid.  However, the Court respectfully recommends denying plaintiff's request for New York State Taxes and Fees.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: August 26, 2022
Brooklyn, New York

/s/ Cheryl L. Pollak
CHERYL L. POLLAK
Chief United States Magistrate Judge
Eastern District of New York